JS 44 (Rev 06/17)

# CIVIL COVER SHEET

18 cv 5029

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM)*

## I. (a) PLAINTIFFS

Stacey Gonzalez and Pavel Reznik

**DEFENDANTS**

City of Philadelphia d/b/a Philadelphia Police Department; Corporal Karen Church and John Does 1-10

18 5029

**(b)** County of Residence of First Listed Plaintiff    Philadelphia PA
*(EXCEPT IN U S PLAINTIFF CASES)*

County of Residence of First Listed Defendant _ _ _ _ _ _
*(IN U S PLAINTIFF CASES ONLY)*
NOTE    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Brian R Mildenberg, Mildenberg Law, 1735 Market Street, Ste 3750, Phila, PA 19103, 215-545-4870 (additional counsel on signature page)

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U S Government Plaintiff
- ☒ 3  Federal Question *(U S Government Not a Party)*
- ❏ 2  U S Government Defendant
- ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for  Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | Liability | ❏ 367 Health Care/ | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability | ❏ 368 Asbestos Personal Injury Product | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| | ❏ 340 Marine | Liability | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ❏ 870 Taxes (U S Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS  Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | |
| ❏ 245 Tort Product Liability | ❏ 445 Amer w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ❏ 2  Removed from State Court
- ❏ 3  Remanded from Appellate Court
- ❏ 4  Reinstated or Reopened
- ❏ 5  Transferred from Another District *(specify)*
- ❏ 6  Multidistrict Litigation - Transfer
- ❏ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U S Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
42 USC Section 1983, 42 USC Section 1985

Brief description of cause
Plaintiff police officers have suffered anti-Semitic discrimination due to their being Jewish

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P

**DEMAND $**

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☒ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*    JUDGE _ _ _ _ _ _    DOCKET NUMBER _ _ _ _ _ _

NOV 19 2018

DATE
11/19/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG JUDGE_____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

18    5029

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 154 North 54th Street Philadelphia PA 19129

Address of Defendant: 750 Race Street Philadelphia PA 19106

Place of Accident, Incident or Transaction: Philadelphia Police Department

---

**RELATED CASE, IF ANY:**

Case Number _ _ _ _ _ _ _ _ Judge _ _ _ _ _ _ _ _ Date Terminated _ _ _ _ _

Civil cases are deemed related when *Yes* is answered to any of the following questions

| | | | | |
|---|---|---|---|---|
| 1 | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 2 | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 3 | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☑ |
| 4 | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ☑ |

I certify that, to my knowledge, the within case ☐ is / ☑ is **not** related to any case now pending or within one year previously terminated action in this court except as noted above

DATE 11/19/2018

_____
Attorney-at-Law / Pro Se Plaintiff        Attorney I D  # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

**A.    Federal Question Cases:**

- ☐ 1  Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2  FELA
- ☐ 3  Jones Act-Personal Injury
- ☐ 4  Antitrust
- ☐ 5  Patent
- ☐ 6  Labor-Management Relations
- ☑ 7  Civil Rights
- ☐ 8  Habeas Corpus
- ☐ 9  Securities Act(s) Cases
- ☐ 10  Social Security Review Cases
- ☐ 11  All other Federal Question Cases
  *(Please specify)* _ _ _ _ _ _ _ _

**B.    Diversity Jurisdiction Cases:**

- ☐ 1  Insurance Contract and Other Contracts
- ☐ 2  Airplane Personal Injury
- ☐ 3  Assault, Defamation
- ☐ 4  Marine Personal Injury
- ☐ 5  Motor Vehicle Personal Injury
- ☐ 6  Other Personal Injury *(Please specify)*
- ☐ 7  Products Liability
- ☐ 8  Products Liability – Asbestos
- ☐ 9  All other Diversity Cases
  *(Please specify)* _ _ _ _ _ _ _ _

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _Brian L Mildow_ , counsel of record *or pro se plaintiff*, do hereby certify

- ☐ Pursuant to Local Civil Rule 53 2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 00 exclusive of interest and costs

- ☑ Relief other than monetary damages is sought

NOV 19 2018

DATE 11/19/2018

_____
Attorney-at-Law / Pro Se Plaintiff        Attorney I D  # (if applicable)

NOTE  A trial de novo will be a trial by jury only if there has been compliance with F R C P 38

Civ 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Gonzalez et al. | : | CIVIL ACTION |
| v. | : | **18    5029** |
| City of Philadelphia et al | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)   In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                                      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                                                                  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)                                                                                                  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (X)

| | | |
|---|---|---|
| 11/20/2019 | Brian R Mildenberg | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-4870 | 215-545-4871 | brian@mildenberglaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

NOV 19 2018

**Mildenberg Law Firm**
1735 Market Street, Suite 3750  |  Philadelphia, PA 19103
t: 215-545-4870  |  f: 215-545-4871  |  brian@mildenberglaw.com

November 19, 2018

Clerk,  U.S. District Court, ED of PA
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106

**18     5029**

**Re:  Stacey Gonzalez et al v. City of Philadelphia et al**

Dear Sir/Madam:

      Enclosed please find one (1) original of Plaintiff's Civil Action Complaint, along with a CD containing a .pdf version of same, and a check in the amount of $400.00 from my co-counsel for the filing fee in this matter.

      Kindly file the original Complaint and issue Summons to the undersigned.

Respectfully submitted,

*/s/ Brian R. Mildenberg*
Brian R. Mildenberg, Esquire
Mildenberg Law Firm
Attorney ID # 84861
brian@mildenberglaw.com

NOV 19 2018

**BRIAN R. MILDENBERG, ESQ.**
**MILDENBERG LAW FIRM**
Attorney ID No. 84861
1735 Market Street, Ste. 3750
Philadelphia, PA 19103
brian@mildenberglaw.com
www.MildenbergLaw.com
215-545-4870
Fax: 215-545-4871
**Attorney for Plaintiffs**
*Additional Counsel Listed on signature page*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------

|  |  |
|---|---|
| STACEY GONZALEZ, | Civil Action No.: |
| and | **COMPLAINT** |
| PAVEL REZNIK, | On behalf of Jewish Philadelphia Police Officers to remedy anti-Semitic discrimination at the Philadelphia Police Department on basis of Jewish Religion and Ethnicity, pursuant to 42 USC Sec. 1981 & 1983 et seq. and applicable laws |
| Plaintiffs, v. | |
| CITY OF PHILADELPHIA d/b/a PHILADELPHIA POLICE DEPARTMENT, | **Jury Trial Demanded** |
| and | |
| CORPORAL KAREN CHURCH, | |
| and | |
| JOHN DOES 1-10, | |
| Defendants. | |

---------------------------------------------------

Plaintiffs, Philadelphia Police Officer Stacey Gonzalez (Gonzalez) and Philadelphia Police Officer Pavel Reznik (Reznik), by and through their undersigned attorneys, complaining of Defendants, including  the City of Philadelphia d/b/a the Philadelphia Police Department ("PPD"), bring the instant action requesting judgment in their favor, and against Defendants, and in support thereof, allege, upon information and belief, as follows:

## NATURE OF ACTION

1. Philadelphia Police Officers Gonzalez and Reznik bring this lawsuit against their employer, the City of Philadelphia Police Department, to remedy discrimination based upon their Jewish ethnicity and/or religion. Plaintiffs have been subjected to anti-Semitism in the work place, and ethnic and religious discrimination and a hostile and discriminatory work environment, in violation of federal law.

## PARTIES

2. The above paragraphs are incorporated herein by reference.

3. Plaintiff, Stacey Gonzalez, (Gonzalez) is an adult female, residing at 154 North 54th St Philadelphia, PA 19129.  At all times material hereto, Gonzalez has been employed by Defendant, PPD, as a police officer for over 21 years.  Gonzalez has been assigned to the 22nd district but has been detailed to the 9th district for approximately six years. Gonzalez is Jewish.

4. Plaintiff, Pavel Reznik (Reznik), is an adult individual, residing at 1102 Poquessing Ave., Bensalem, PA 19020.  At all times material hereto, Reznik was employed by Defendants as a police officer for over 12 years.  Reznik is Jewish and is an immigrant to the United States from Russia.

5. Defendant, the Philadelphia Police Department ("PPD") is a government agency that conducts business in the Commonwealth of Pennsylvania and is headquartered at 750 Race Street Philadelphia, PA 19106.

6. Defendant, Corporal Karen Church ("Church"), at all times material herein, acted individually, as well as in her individual capacity as an agent, servant, workman, or employee of, the Philadelphia Police Department acting under color of State law.

7. Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties are incorporated as Defendants in each and every count and averment listed above and below.

## JURISDICTION AND VENUE

8. The above paragraphs are incorporated herein by reference.

9. Jurisdiction over the matter is conferred upon the Court by 28 USC § 1331, as the cause of action arises under federal law, to wit: 42 U.S.C. § 1981 & 1983.

10. Venue is proper in the Eastern District of Pennsylvania, as the facts and transactions involved in the discrimination complained of herein occurred in large part in this judicial district at the Philadelphia Police Department, in Philadelphia, Pennsylvania.

## STATEMENT OF FACTS

11. The foregoing paragraphs are incorporated herein by reference.

12. In a pattern of unlawful, deliberate and discriminatory acts, Defendants have created a racist, anti-Semitic, and anti- Jewish environment at their employment at the PPD.

13. Upon information and belief, PPD supervisors, including Defendant Church, have sanctioned these actions by both using and allowing continued use of discriminatory language in both spoken and written forms in and around the PPD from employees, allowing discriminatory drawings in PPD lockers and on PPD police cruisers without adequately investigating the source or cause of said drawings in and around PPD property, and issuing unwarranted and disproportionate warnings and punishments against Plaintiff Jewish police officers  wherein discrimination was exhibited.

14. Upon information and belief, PPD supervisors also directed discriminatory and prejudicial acts towards Jewish police offers and would intimidate these police officers by insulting them, requiring them to perform additional work not asked of other officers, (mainly white Christian officers), and precluded them from taking adequate time of for religious holidays, gatherings and other Jewish religious expressions.

### PLAINTIFF GONZALEZ

15. Upon information and belief, as part of Defendants' discriminatory and deliberate actions against Jewish police officers, Gonzalez, a Jewish police officer, was targeted.

16. The discriminatory, racist and anti-Semitic actions taken against Plaintiff Gonzalez are delineated in her Philadelphia Police Department Internal Affairs Interview, attached hereto at Exhibit A.  These actions include, but are not limited to:

    a.  Defendant Church stating: "**Why doesn't the United States just take a missile and blow up Israel**."

    b.  Defendant Church refusing to make accommodations pertaining to Gonzalez's hours while she was in school. However, accommodations were made for non-Jewish officers who were in school/taking classes.

c.  After Gonzalez made it known that she heard and was offended by Church's comment about the U.S. blowing up Israel, instead of apologizing to her, Church retaliated and discriminated against Gonzalez even more by:

  1.   making her stay and clean up after shifts after letting everyone else go home;

  2.  speaking to her in a demeaning way and with a negative attitude.

d.  Church disciplined Plaintiff for leaving the department on break to pick up religious items on the eve of Yom Kippur.  It was common practice for officers to run errands while on break in preparation for holidays including Christmas and other non-Jewish holidays. Gonzalez told another officer that she was leaving. However, she was disciplined despite other non-Jewish police officers being allowed to run errands prior to holidays without incident.

e.  Further, Defendants subjected Plaintiff to unfair treatment during Jewish Holidays.  It has been a regular unspoken and undocumented practice of the PPD to allow Christian officers to work a 4-hour day during the Christmas holidays while still getting paid for a full 8 hours whereas those officers of Jewish faith must put in a request to take time off for their religious holidays.  Plaintiff was routinely denied such requests for alleged "manpower" reasons, but the real reason is that her supervisors consistently display anti-Semitic conduct.  Further, Plaintiff believes and therefore avers, if Jewish officers are allowed time off, then they are

required to take a full 8 hours unpaid off and are not offered the possibility of working 4 hours for a full 8 hour pay day.

f.   In line with the anti-Semitic harassment, Sgt. Oneeka Noble, while scheduling the 2018 Memorial day potluck for police officers, told Gonzalez "**don't bring no mother fucking Kosher shit**" when scheduling her for barbeque chicken.

17. Due to the actions of Defendants, Gonzalez was forced to work in a hostile environment and was unjustly treated, because she is Jewish.

18. Gonzalez has filed a charge of discrimination with the PHRC and the EEOC. Plaintiff reserves the right to amend this action upon determination by the PHRC and the EEOC.

19. In addition to the foregoing, Plaintiff has been made aware of the anti-Semitic treatment of her Jewish co-worker police officer, Plaintiff Reznik, as described below, further contributing the hostile environment.

**PLAINTIFF REZNIK**

20. Upon information and belief, Plaintiff Reznik was also targeted due to being Jewish.

21. The discriminatory and anti-Semitic actions taken against Plaintiff Reznik go back years and are described in Reznik's memorandum that was sent to the Police Commissioner, attached hereto as Exhibit B.  Those actions include the following, by way of example:

a.   Beginning when he started in the Police Academy, comments were made to him such as:

1. "**I must break you**" (with a fake heavy Russian accent), in front of other recruits;

2. Comments about the fact that he was an immigrant, always bringing up, "all the benefits immigrants get, without doing any work";

3. Anytime he would get mail in academy recruits would say immigration was looking to deport him.

4. Comments such as, "**Oh, we're just getting Jewed out**."

b. Comment made by Sgt. Richie that "there are far and few Russians in a police dept, so you watch what you do, you need your benefits".

c. Officer Mabry stating at a department cookout: "I ain't eating your nasty Russian food."

d. Sgt. Ritchie stating, "I must break you, we must destroy your country."

e. After getting permission to leave work early to attend a meeting at the *Shomrim* organization, which is a recognized local organization of Jewish Police Officers ("**Shomrim" means "Guards" in Hebrew), Sgt. Miller stated, " that's some bull shit, no need for you to go home early, what are you, special**?"

f. Failure to accommodate Plaintiff Reznik's work schedule when he requested day time work when his wife was pregnant, but accommodating others officers who had less seniority than him, as part of the discrimination and harassment.

g. Finding the passenger side rear-door of the patrol car directly in view from the seat of his patrol car scratched with a Star of David with the words

"**Hebrew Hammer**" written underneath (photo of this incident is attached

hereto as Exhibit C);

h.  Finding an anti-Semitic symbol scratched into a locker next to his at the

police department.  Specifically, the locker had a Nazi "SS" symbol,

which is the symbol **for Nazi Germany's SS**, along with the German

word "**totenkamp" meaning "skull and bones**" (photo attached hereto as

Exhibit D), meant to reference Nazi Germany and to scare and harass

Plaintiff.

i.  Officers in his presence having anti-Semitic discriminatory conversations.

For example, on one occasion Reznik and other officers were sitting in the

call room and one officer stated, "**Hey look, there is some Matzoh on the**

**table!**"  An officer teasingly replied to that, "**Common, don't be a**

**racist**." Another officer, Marcus O'Shanessy, turned towards P/O

Dougherty and said, "**It is not racism, it is Anti-Semitism**." P/O

Dougherty then made a disgusted face expression, as if he was extremely

irritated, and said in an angry manner: "**Jews can't cook for shit, their**

**Hanukah Food sucks**";

j.  Being singled out as a Jewish officer in November of 2017 when he

responded to a call for a stolen car and parked to talk with the victim who

had stuck his head into the patrol car to discuss the matter with Reznik.

Later that day Reznik was called into to Captain Glen's office based on a

call the victim made to the PPD complaining about seeing a jewish "flag"

on Reznik's phone in his patrol car and of being "unsympathetic" when

discussing the stolen vehicle with the victim. Captain Glen then did strip Reznik of his patrol car and asked him to walk the beat in the dead of winter the next day.  This was to further harass Reznik as a Jew.

k.   Reznik, a 6'5 male would repeatedly request to be put on van patrol, as driving in the smaller patrol calls was painful to him.  Despite Reznik's numerous requests and the obvious pain caused to Reznik when driving the smaller patrol cars, Reznik was almost never put on van duty.

l.   Finally, officer Reznik has stopped asking for time of to celebrate his Jewish holidays, as all of his fellow officers of other faiths are allowed to do, mainly because a majority of the time his requests were denied due to "manpower" reasons and if they were granted he was required to take a full day unpaid off and not offered the chance to work 4 hours paid and take 4 hours paid off like the Christian officers were.

22. Due to the actions of Defendants, Gonzalez and Reznik were forced to work in an anti-Semitic, racist and hostile environment and were unjustly treated on a discriminatory basis.

### STATEMENT OF CLAIMS

### COUNT I
### CIVIL RIGHTS VIOLATION 42 U.S.C. § 1983-HARASSMENT, DISCRIMINATION AND HOSTILE WORK ENVIRONMENT ON THE BASIS OF ETHNICITY AND RACE

23. Plaintiffs incorporates by reference all prior paragraphs as if fully set forth at length herein.

24. As a result of Defendants actions as aforesaid, Defendants have denied Plaintiff the right to the same terms, conditions, privileges and benefits of their employment

agreement with the City of Philadelphia Police Department, in violation of 42 U.S.C. § 1981.

25. Such violations of 42 U.S.C. § 1981 is actionable against the City of Philadelphia, a municipal entity, pursuant to 42 U.S.C. § 1983.

26. Defendants have caused Plaintiffs to suffer humiliation and embarrassment, emotional distress, and have sustained damages for which recovery of compensatory damages may be had pursuant to 42 U.S.C. § 1983.

27. Said hostile environment and discrimination against Plaintiffs was pervasive and severe.

28. Said hostile environment and discrimination against Plaintiffs have affected Plaintiffs to their detriment.

29. Said hostile environment, discrimination and harassment would detrimentally affect a reasonable person under similar circumstances.

30. Said discrimination and harassment has caused a hostile work environment.

31. Said discrimination, and harassment has exacerbated the already hostile work environment to the point of a crisis.

32. Said violations were done intentionally and/or knowingly with malice or reckless indifference, and warrant the imposition of punitive damages.

33. As a direct and proximate result of Defendants' violation of 42 U.S.C. § 1983 Plaintiffs have suffered the damages and losses set forth herein and have incurred attorneys' fees and costs.

34. Plaintiffs are suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts and misconduct, unless and until this Court grants the relief requested herein.

35. The wrongful acts and conduct of Defendants were done with deliberate indifference to the statutory and constitutional rights of Plaintiffs.

## COUNT II
## MONELL

36. The above paragraphs are hereby incorporated herein by reference.

37. Prior to the events described herein, Defendants developed and maintained policies, practices, procedures and customs exhibiting deliberate indifference to the Constitutional rights of Plaintiffs, which caused violation of Plaintiffs constitutional and other rights.

38. Plaintiffs suffered harm due to the Defendants' conduct.

## COUNT III
### 42U.S.C. Sec. 1985
### CIVIL RIGHTS CONSPIRACY

39. The foregoing paragraphs are incorporated herein by reference.

40. The foregoing conduct of Defendants violates Plaintiffs' rights pursuant to 42 U.S.C. Sec. 1985, which proscribes any agreement or conspiracy to violate Plaintiffs' federally protected civil rights, including those rights under 42 U.S.C. Sec. 1981 and 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that this Court grant the following relief to Plaintiffs:

a) declaring the acts and practices complained of herein to be in violation of Sections

1981 and 1983;

b) entering judgment against the Defendants and in favor of Plaintiffs in an amount to be determined; awarding compensatory damages to make Plaintiffs whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiffs have suffered or may suffer as a result of Defendants' improper conduct; awarding compensatory damages to Plaintiffs for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiffs have suffered or may suffer as a result of Defendants' improper conduct; awarding punitive damages to Plaintiffs;

c) awarding Plaintiffs such other damages as are appropriate under Section 1981 and Section 1983.

d) awarding Plaintiffs the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and, granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

e) A declaratory judgment that Defendants have violated 42 U.S.C. Sec. 1985 and an order for payment of all compensatory and punitive damages awarded after trial;

f) An award of Plaintiffs; attorneys fees and costs of suit as provided by 42 U.S.C. § 1988.

## JURY DEMAND

Plaintiffs hereby demand a jury trial as to all issues so triable herein.

[remainder of page left intentionally blank]

Respectfully submitted,

BY: */s/ Brian R Mildenberg*
BRIAN R. MILDENBERG, ESQ.
MILDENBERG LAW FIRM
Attorney ID No. 84861
1735 Market Street, Ste. 3750
Philadelphia, PA 19103
215-545-4870
Fax: 215-545-4871
**Attorney for Plaintiff**

.

DATED: 11/19/2018

BY: */s/ Matthew Weisberg*          BY: */s/ Gary Schafkopf*
MATTHEW B. WEISBERG, ESQ.          GARY SCHAFKOPF, ESQ.
WEISBERG LAW                       SCHAFKOPF LAW, LLC
Attorney ID No. 85570              Attorney ID No. 83362
7 South Morton Ave. 19070          11 Bala Ave
Morton, PA                         Bala Cynwyd, PA 19004
610-690-0801                       610-664-5200 Ext 104
Fax: 610-690-0880                  Fax: 888-238-1334
**Attorney for Plaintiff**         **Attorney for Plaintiff**

DATED:          11/19/2018          DATED: 11/19/2018

STATEMENT OF:        **P/O Stacey Gonzalez #9429, PR #230178 B/F**
Appointment Date: 10-06-97
Assignment Date: 07-14-05
Assignment: 22nd District

DATE AND TIME:       10-23-18  2:00 PM

PLACE:               Philadelphia Police Department
                     Internal Affairs Division
                     7790 Dungan Rd.

**EXHIBIT  "A"**

IN THE PRESENCE OF:  Gary Schafkopf Esq.

CONCERNING:          EEO #18-0042

INTERVIEWED BY:      Sergeant Brent Conway #8892

RECORDED BY:         Sergeant Brent Conway #8892

Officer Gonzalez, I am Sergeant Brent Conway #8892, Internal Affairs Division, and I will be taking your statement, directly on this computer.  You are being interviewed regarding a possible EEO/IAD complaint.

Q.  Are you represented by counsel?
A.  Yes.

**Officer Gonzalez, you are reminded that failure to cooperate in a Departmental Administrative Investigation is punishable by ten (10) days suspension to dismissal under Article 1- §008-10 of the Disciplinary Code.**

**Officer Gonzalez, you are reminded that lying or attempting to deceive regarding a material fact during the course of any Departmental investigation is punishable by dismissal under Article 1-§009-10 of the Disciplinary Code.**

Q. Do you understand this?
A. Yes.

Q. Are you willing to cooperate?
A. Yes.

Q. Are you recording this interview?
A. No.

Q. Please state your rank, full name, badge number, payroll number, and district or unit of assignment.
A. Police Officer Stacey Gonzalez #9429, Payroll #230178, 22nd District.

*Stacey Gonzalez #9429*

Police Officer Stacey Gonzalez      10-23-18

I am an EEO investigator with the Philadelphia Police Department. I have been assigned to investigate allegations you made in an e-mail you sent to the Integrity Officer on 10-07-18, with the subject, "Anti-Semitism in the workplace."

Q. Officer Gonzalez, did you send an e-mail you to the Integrity Officer on 10-07-18, with the subject, "Anti-Semitism in the workplace?"
A. Yes I did.

Q. In the e-mail, you sent to the Integrity Officer on 10-07-18, did you allege that you have been treated disparagingly because of your religion?
A. Yes.

Q. Can you state your religion for the record?
A. I am a Conservative Jew.

Q. In the e-mail, you sent to the Integrity Officer on 10-07-18, you stated you first made a complaint with the Philadelphia Police Department in reference to comments that were made by Corporal Karen Church about Jewish people in Israel. Is that correct?
A. What I meant to say was I mentioned it to my Sergeant who was Sergeant Cione #336.

Q. When did you did you inform Sergeant Cione about the comments that were made by Corporal Karen Church about Jewish people in Israel?
A. I commented to him (Sergeant Cione) that I went upstairs to take a prisoner outside and she was in her office. I don't remember why I went into her office. She was looking at the TV and they were giving out a news report in reference to Israel fighting with Hamas. She said why doesn't the United States just take a missile and blow up Israel. I didn't say anything to her; I just walked away.

Q. Was an investigation conducted in reference to the comment you heard Cpl. Church made?
A. He asked me if I wanted to do a memo on it; I told him no because my attitude was the police department wasn't going to do anything about her because it was not the first time she made off the cuff remarks about race and religion.

Q. Was anyone else present when Corporal Church make these comment(s)?
A. There were other people in the office; I cannot remember the officers' names because they may be the same officers who are there. I know for a fact that they will not say she said anything because they didn't say she did it for any other officer.

Q. What district were you assigned to when you heard Corporal Church make the comment about Jewish people in Israel?
A. I was assigned to the 22nd but detailed to the 9th for the 9th District CCTV.

2

_P/o Stacey Gonzalez #9479_
Police Officer Stacey Gonzalez    10-23-18

Q.  What district was Corporal Church assigned to when you heard Corporal Church make the comment about Jewish people in Israel?

A.  She was the corporal of the 9th District. She also made comments about me being late for work. Although Commissioner Ramsey said supervisors were supposed to make an accommodation for us if we were going to school. She said she didn't care what he said, I needed to be on-time. It was Commissioner Ramsey recommendation to the supervisors and he said it on TV and that the supervisors were supposed to work with you if you were attending school. They felt that it wasn't fair to the rest of the officers to have people come in late or make accommodations but they did it for Troy Brickle. Techner was the lieutenant in the 22nd at the time.

It was done for Officer Brickle who is assigned to the 9th District they changed his schedule so he could go to school on the weekends. With me as they threatened me that if I did not come to work on-time they were would discipline me. They constantly reported to my supervisors that I was late. I was also counseled on that by Lt. Techner and with others in the room who's names I don't recall. Lt. Techner also threatened to take me to the front.

Q.  Did you request to come into work late to accommodate you going to school?

A.  Yes, I explained to them that with my classes we were sometimes required to do clinical. My supervisors at the time, Cpl. Fabrizo, knew that I was going to school and I showed her my schedule.

Q.  How many days a week were you late for work?

A.  It was almost every day; with the load of studying and research I was doing, it was a lot. Sometimes I made it in time, but mostly it was every day, I was late.

Q.  Did you believe you supervisors were required to permit you to be late for work every day to accommodate your school schedule?

A.  Yes, because if you are going to let Troy Brickle to change his schedule to accommodate school why wouldn't you do that for me too; also Ramsey said that they were supposed accommodate us. Deputy Commission Sullivan backed up the order when we met with him and the Guardian Civic League about a racial comment Cpl. Church made about Officer Middleton. He backed up what the Mayor said about working with officers who attended school.

Q.  Why do you believe you Cpl. Church and Lt. Techner did not allow you to come into work late to accommodate your school schedule?

A.  I know Cpl. Church did not like me at all. With Techner, I believe he felt it was unfair for me to come in late all the time when the other officers had to come in on time. He didn't agree with the policy and he felt that it was unfair to the officers who were not going to school.

3

Police Officer Stacey Gonzalez  #9479  10-23-18

Q.  Do you know of any other officers who were permitted to come late for work or to adjust their schedules to accommodate them attending school?
A.  The only one I know of was Troy Brickle.

Q,  Do you know who permitted Officer Brickle to adjust his schedule?
A.  I don't remember what he told me. I just know his schedule was adjusted so that he could attend classes at Lincoln University.

Q.  In the e-mail, you sent to the Integrity Officer on 10-07-18, you stated you made the City of Philadelphia aware that Corporal Church began treating you disparagingly after you reported that you heard her a make a comment about Jewish people in Israel. Is that correct?
A.  I meant to say Sgt. Cione. It was only Sgt. Cione I spoke to. When I talk about supervisors, I talk about the City of Philadelphia0

Q.  How did Corporal Church begin treating you disparagingly after you reported that you heard a make a comment about Jewish people in Israel (please provide the dates associated with the instances you believed you were treated disparagingly and the names of any witnesses of the alleged disparate treatment in your response to the question)?
A.  I can't remember the date, but she said in front of Officer Hector Rivera (retired) and Evelyn Keith (deceased) that they Evelyn and Hector can leave, but she said since you can come in late you stay and clean up the CCTV.

The manner in which she said it to me it was like she was talking to a slave, in that type of attitude. Evelyn told me she would stay to help me clean up because when she said that to me Evelyn told me not say anything to her because she knew she got under my skin with the way she said it to me. It is her tone and her attitude; she was always demeaning. She had a way of talking to you like you were way beneath her.

Another incident, we were always told to tell her if we were was leaving the CCTV. I called her to tell her I was leaving and she said something in the range of, "Why are fucking tell me" because she was expecting us to work things about amongst ourselves."

On the eve of Yom Kippur; that was the investigation that was done in house. I told Hector Rivera, because Cpl. Church was not there because she and others were out shopping for another sergeant's retirement. Because of her comment to not to call her and to work it out amongst ourselves. I told Hector that I was going out to get something to eat. While I was out Delilah's called and told me that my Kippah and Tallit were ready and that I had to come and get them because the lady she worked with went to Israel. I went there, she was crowded and the only one working. I told her I had to go because I went past my time for lunch. They were looking for me because they didn't know where I was and she lied about saying she told us to tell her where we were going. Anytime you called, her she would tell us to handle it amongst ourselves. Other officers are gone for two hours and more, she didn't say anything to them and she never inquired where they were. Hector would go to his son's baseball game in the Northeast. Renee would pick up her children but all of the sudden because it was regarding my Jewish Holiday of Yom

4

Police Officer Stacey Gonzalez #9429    10-23-18

Kippur, all of the sudden the directive kicked in. there were two male officers and neither officer knew where I was. Hector said he was never interviewed and it came up at arbitration that he wasn't interviewed. She came up with something about not wanting to bother him because he was close to retirement; she stated that at the PBI.

Cpl. Church approached me and said I was being selfish because the two officers couldn't enjoy the party with the sergeant because I was gone. I reminded her that on Jewish holidays I am supposed to be enjoying my religion. But when it is a Christmas affiliate holiday (Christmas and Thanksgiving) you get a half a day. It is okay if the department wants to do that, I am just say acknowledge the rest of us when it comes to our holiday and give us the same respect. We are told we cannot take part in them because of manpower. Cpl. Church and Lt. Techner would give people half days. Lt. Techner said in the Operations Room that if he was Commissioner, "All Christians would have off on Christmas." Since I complained about Cpl. Church anti-Semitism they allowed me to take off my holidays, but they take eight hours from me. If they are going to allow the Christians to be paid for eight but only work four on their holiday we should get the same respect on our holidays.

Q. Do you know of any other officer who have complained that they were not permitted to celebrate a holiday associated with their religion?
A. Robin Middleton; it was in her lawsuit against the city in regards to worshipping. Pavel Reznik file a suit in reference to not being allowed to worship on our holidays and not being given the same courtesy as given to Christian officers on Christmas and Thanksgiving. He included Cpl. Church because she cursed him out when he dropped off evidence. I didn't witness the incident he had with Cpl. Church.

Q. In the e-mail, you sent to the Integrity Officer on 10-07-18, you stated that former Police Commissioner Charles Ramsey and the administration protected Corporal Church. Is that correct?
A. Yes.

Q. How did former Police Commissioner Charles Ramsey and the administration protect Corporal Church?
A. If you know this person has a history of making derogatory comments, you are protecting her if you don't take any action against. If it were me or someone else I would be sitting here with a lawyer explaining what I did and I would be fired or suspended.

She even stated out of her mouth she was protected by someone on the second or third floor because she was never taken to the front.

Q. In the e-mail, you sent to the Integrity Officer on 10-07-18, you stated Corporal Church was known for making racist remarks toward non-white and non-Christian officers. Is that correct?
A. Yes.

5

P/o Stacey Gonzalez #9429
Police Officer Stacey Gonzalez      10-23-18

Q. Can you describe, in your own words, when you witnesses Corporal Church make a comment that you believed was racist (in your response, please include the dates you witnessed Corporal Church make a comment that you believed was racist and the names of any witnesses who were present when the comments were made)?
A. She told me to stay behind and clean-up after Evelyn and Hector left. She was speaking to me, as I was a slave. If Evelyn were here, she would say the same thing that she felt that was the same way she was talking to me.

Q. Has anyone else informed you that Corporal Church made a comment to them that they believed was racist?
A. Robin Middleton; when we had the meeting at the Guardian Civic League and Rochelle Bilal she said two officer came to her and told her that Karen Church stated, "I can't wait until the black one leaves, so that when the white one comes they can do whatever they want." She was referring to Captain Clark leaving when Captain O'Donnell came back. She was referring to her and another sergeant (Deblasis) who from what other officers (Rodney Anderson) told me, used the "N" word. It had something to do with his truck being park in the 9th District parking lot. He told me that Deblasis used the "N" word in regards to him.

Q. What is the "N" word?
A. Nigger.

Q. In the e-mail, you sent to the Integrity Officer on 10-07-18, you stated you lost a day's pay and had a mark put on your record. Is that correct?
A. Yes, because I was taken to the front because of the Yom Kippur incident.

Q. Did you receive disciplinary action for being AWOL?
A. Yes.

Q. When did you receive disciplinary action for being AWOL?
A. It was in 2016 or 2015; somewhere around there.

Q. In the e-mail, you sent to the Integrity Officer on 10-07-18, you stated you went to buy a Kippah and a prayer shawl (tallit) that went over by forty-five minutes. Is that correct?
A. Yes; like I said she was by herself and Judea shops are very busy on the holidays and the items were coming from Israel. You have until 6 PM to get your products before the Jewish holidays begins because all of the Jewish stores close by 6 PM and some stay closed for weeks.

Q. Did you inform Corporal Church that the reason you were leaving was to so that you could go buy a Kippah and a prayer shawl (tallit) on 10-02-14?
A. After I came back, but like I said she wasn't there. She was shopping. She was late for work; Sgt. Shalton was sitting in her place. She wasn't there so I don't understand why she punished me for shopping when she did the same thing. It is double standard because Christian officer shop for Christmas and Thanksgiving and no one says anything even

6

Police Officer Stacey Gonzalez    10-23-18

though they are gone for hours. The Police Department even lied in the Federal EEOC investigation that it doesn't happen. The federal EEOC investigation said Police Department said the police department said that doesn't happen that we split the day on Christmas or Thanksgiving. So, I felt they were putting me on trial because of my religion. She used AWOL as an excuse because the two officers couldn't attend the sergeant's party.

I was told I couldn't go to Synagogue that night. I talked to Sergeant Cione that I was going to put in the 2nd and the 3rd for Yom Kippur. He told me that Lt. Techner would not approve me for the 2nd because of manpower. I put in for the 3rd but I couldn't celebrate Yom Kippur eve due to manpower.

Q. Did you file a grievance related to being found guilty for neglect of duty on 10-02-14?
A. When I spoke to the FOP (Kushner), he said he would be there for when they interviewed me. He said other than that I shouldn't mention it because on Christian holidays officers work four hours and get paid for eight. He told the Lt. Techner would be opening a can of worms by taking me to the front for punishing me when Christian officers that are permitted to do the same.

Kushner also told me not to mention that Christians get half days on Christmas and Thanksgiving. They only want to hear about where you were on 10-02.

The only grievance that went to the arbitrator was my suspension and the charge of AWOL. I also wanted to bring up the fact the FOP told me that I would have representation at the hearing. I found out later that Marc Gellman didn't represent me, he represented the interests of the FOP. I found that out mostly through Andre Boyer's blog that I am a 3rd party. When I was told not to mention to Christian holidays because it wasn't in the interest of the FOP to let people know what was going on the Philadelphia Police Department he wasn't going on bring it up. If I had known he was not going to represent me I would have retained my own lawyer because he didn't represent my interest at all. That is what he told a judge, that he only represented the FOP and not the officers, we were a 3rd Party. I understand there is a lawsuit; several from what I understand.

Q. What was the arbitrator's ruling on your grievance?
A. He supported the punishment; he found me guilty of AWOL.

Q. When did you stop being assigned to the 9th District Cell room?
A. It was soon after that incident; I can't remember the date.

Q. Have you had a contact with Corporal Church since you stopped working in the 9th District Cell room?
A. No, I haven't had any contact with her; I don't want any contact with her.

7

Police Officer Stacey Gonzalez        10-23-18

Q. Did you, in anyway, inform Corporal Church that you were gone for a long period of time because you were shopping for religious items you needed?
A. No, because she was not there.

Q. Can you explain how it is possible for Corporal Church to treat you disparagingly, if she did not know you were leaving or why you were gone so long?
A.   When I came back to the district, Sgt. Cione came down to the 9th District and I showed him the purchase I made and a receipt showing where I was. He said we are going upstairs because Lt. Best wanted to know what happened. She came in later and said you are selfish and responded you are selfish.

There are always courtesies given to Christians to worship their holidays and leave early, but the rest of us are nailed to the directive when it comes to our holidays. My basis issues with this why was I called in and given memos when Christian officers are allowed to shop for hours and worship on their holidays and nothing is said to them.

When they were going to their kid's baseball games, to pick up their kids or leave to go home nothing is said. When Christians are allowed to go to religions services on Sundays, nothing is said. Rivera, Evelyn and Brickle are all Christian they are held to a different standard; the directives are not enforced. They are accommodated.

Q. How do you know Rivera, Evelyn and Brickle are Christian?
A. Because Evelyn told me her foster family had her baptized and Brickle told me his family was Christian.

Q. Is it your belief that Rivera, Evelyn and Brickle were permitted to go to their kid's baseball games, to pick up their kids, leave to go home or adjust their schedule because they are Christian?
A. Yes.

Q. What are you basing you opinion on?
A. Brickle is a man of color and I am a woman of color but when it came to school, they adjusted his schedule so he could to school, but they would not allow me to adjust my schedule.

Hector who is a Latino male, used to leave all the time for his kid and they never asked where he was going.

Evelyn used to go shopping and no one would ask where she was. They would call to ask where she was at and I would tell them she was out. She never called to say she was leaving.

Renee Norman who is also an African American woman, she would take her kids to school in a police car and they went to Catholic school. Why didn't they put her under investigation for that?

8

Police Officer Stacey Gonzalez    10-23-18

If it is not because I am Jewish, then what is it, because I have something in common with everyone I just mentioned; except for being Christain.

On all squad days, Cpl. Church would text Norwood who when then text Hector to see what time they wanted to come in. Hector would text me to let me know I could come in late but I never did because of the incident I had with her. I never came in late or did the half days like they did but she allowed them to do it.

Q. In the e-mail, you sent to the Integrity Officer on 10-07-18, you stated Christian officers are allowed to shop for hours on their holidays. Is that correct?
A. Yes.

Q. Who do you know that was permitted to shop while on-duty?
A. Evelyn Keys; she shopped because she had two grandson. Renee Norman would come late for work because she was shopping for her kids. I would have to wait for her come in because she was late and she would come in with Christmas bags with her. Even the corporal herself used to go shopping. She would go shopping for the Christmas parties.

Q. Who do you know that specifically was permitted to shop for a religious holiday while they were on-duty?
A. No body that I know. I guess they took it as permission because they weren't questioned when they came back from shopping like I was when I shopped for Yom Kippur. That was the only time I shopped on duty for a religious holiday.

I have seen officers in Toys R Us for hours.

You see it all over the news that officers are getting ashes on their foreheads on Ash Wednesday. I have never heard of an officer being punished for going to get Ashes on Ash Wednesday and being on the news.

Q. Has anyone ever specifically told you that you could not shop for items to do with your religion or a religious holiday while you were on-duty?
A. Yes; I was taken to the front for it so I took that as the answer to that was no because I was charged with AWOL and lost a day's pays and the hours taken away from me for the time I missed.

Q. Has anyone told you that they specifically told their supervisor that they were going shopping for items related to a religious holiday?
A. No, they never told me that. Like I said it is a common practice in the Police Department. There was no reason to; they weren't going to get in trouble for it because they have been doing it for years.

9

Police Officer Stacey Gonzalez   10-23-18

Q. Is it your assertion that supervisors allow their personnel to shop while on duty, but that it is only limited to those individuals who are shopping for a Christian holiday?

A. It has been limited to those who are shopping for Christmas holidays. Why weren't they punished like I was for going on my time and I was? Over the time, everyone knew what happened when the officers leave and come back with bags in their cars. From what I know, I am the only officer who got punished for a religious holiday and not asking permission to leave the district.

Q. In the e-mail, you sent to the Integrity Officer on 10-07-18, you stated on Christian holidays, Christian Officers are paid eight hours but only work four hours, while Jewish officers get charged a full eight hours on Jewish holidays. Is that correct?

A. Yes.

Q. What Christian holiday are you referring to that Christian Officers are paid eight hours for but only work four hours?

A. Thanksgiving and Christmas. You get a text message from a sergeant asking you if you want to work early or late. You come in early, work four hours and are replaced by another officer. On Jewish holidays, I get eight hours taken out of me. If you are going to do it for everyone else, you have to do it for me on my holidays; if you will do it for Christmas.

Q. How long have you been police officer with the Philadelphia Police Department?

A. 21 years.

Q. How many days have you work Christmas or Thanksgiving?

A. I haven't worked either in five years; I take off because if you are not going to give me my holidays I am not going go work yours. Even though I am off I still ask officers if they split the day and some say yes and other don't say anything, but they still practice it and the 9th practices it too.

Q. In the e-mail, you sent to the Integrity Officer on 10-07-18, you stated that you currently have a supervisor that creates an anti-Semitic atmosphere. Is that correct?

A. Ye.

Q. What is the name of the supervisor you currently have that you believe created an anti-Semitic atmosphere?

A. Sgt. Oneeka Noble.

Q. Can you describe, in your own words, how Sergeant Noble created an anti-Semitic atmosphere (in your response, please include the dates of the incidents you refer to and the names of any witnesses to those incidents)?

A. Let's start with the last year. I didn't work Christmas or Thanksgiving but I had to put a vacation memo requesting off on Yom Kippur and Rosh Hashanah and they took eight hours from me but when Christmas or Thanksgiving come you don't have to put a memo in unless you want the whole day off. Officers work four hours, late or early, and they are replaced by another officer and being paid for eight hours while working four.

10

Police Officer Stacey Gonzalez      10-23-18

I didn't think of it at first, because I try to give everyone a chance because Christmas and Thanksgiving is always grandfathered in and have been since I have been on the job. Sergeant Noble was talking about having a BBQ on Labor Day and we did have a BBQ. Before the BBW Officer Gordon was making a list for what everyone was bringing to the BBQ. I told Officer Gordon I would bring in fried chicken and it would have been Kosher. She was going around asking people what she wanted to bring inside the Operations Room. Officer Gordon's was back to me and Sergeant Noble was looking at her list and looked at me and said, "Stacey, don't bring in no mother fucking Kosher shit." I knew she was talking about the BBQ. I didn't say anything to her and haven't said anything to her unless it is about the job because of everything with Cpl. Church, I was done. I spoke to Civilian Doris about and she said Sergeant Noble told her not to bring in any cake but she didn't say it the same way she said it to me. Officer Gordon said she didn't hear Sergeant Noble make that statement to me, but I find it very hard to believe because she was standing closer to Sergeant Noble than I to you right now.

Q. In the e-mail, you sent to the Integrity Officer on 10-07-18, you stated that supplied a written memorandum of Sergeant Oneeka Noble's continued harassment and workplace hostility toward you because you put yet another EEOC complaint regarding anti-Semitism. Is that correct?
A. Yes. The first was Karen Church and the second one is against Sergeant Noble. If Sergeant Noble would have came to me and apologized to me I would have had to accept her apology because under our faith I would have accepted her apology and taken it no further. To me that means she had a problem with my faith and I wonder if she would have said the said thing if I was Caucasian and Jewish.

Q. Who did you submit the memorandum to?
A. To my attorney.

Q. Did you inform any of your supervisors that you believe Sergeant Noble was harassing you?
A. No, I didn't say anything.

Q. Did you inform Sergeant Noble that you filed an EEO complaint against Cpl. Church?
A. No; I know they know I filed one against Cpl. Church with the federal EEOC that is still open because from what I understanding no one is cooperating; regarding the city according to my ex-attorney Todd Mosser.

Q. In the e-mail, you sent to the Integrity Officer on 10-07-18, you stated that Sergeant Noble would face no punishment because she is an African American officer who is being protected by the department, especially the FOP. Is that correct?
A. Yes, because the FOP (Mike Trask and Roosevelt Poplar) said they weren't going to have anything to do with it. They said take it to your people because they knew I was talking to the JCRC. They stated they didn't want anything to do with my complaints regarding the Christian holidays. I get from the talking to the FOP that they are afraid of

11

Police Officer Stacey Gonzalez          10-23-18

the JCRC who is watching this very carefully. Roosevelt Poplar said the most he could do was give my information to Commissioner Ross.

When I did get my suspension from Ramsey, which was a long time after the PBI hearing, he signed it not far from the day the he was retiring because he would not have to face the aftermath of this. Which I will be suing him because he knew what I was saying about Christmas and Thanksgiving was right.

Q. What do you believe Sergeant Noble should face punishment for?
A. She is a single mother, she has a daughter and she is a new sergeant. Her punishment should be her being trained on the diversity in the police department. I am not asking for her to be fired or for her stripes to be taken away; I just want her re-educated. I am not going to do to her what she and the Police Department did to me. But Karen Church, I want her to be punished to the fullest, not because of her color but because of her actions punishing me for being Jewish.

Q. In the e-mail, you sent to the Integrity Officer on 10-07-18, you stated that another Jewish officer will also report their concerns with anti-Semitism within the Philadelphia Police Department. Is that correct?
A. Yes.

Q. Who is the other officer who also has concerns with anti-Semitism within the Philadelphia Police Department?
A. Pavel Reznik.

Q. Is there anything else you would like to add that had not been addressed in this interview?
A. That the police department needs to add more diversity classes because this is really embarrassing. An incident happened last year when an Nazi symbol was found on a 2nd District locker and we also gave a statement that Pavel saw a symbol of a Jewish Star with the words "Hebrew Hammer" on the side of the a 22nd district police car. He reported to our attorney at the time and reported it to the federal EEOC as part of our investigation. He was asked why he didn't report it to the police department and he said he was dealing with officers making anti-Semitic remarks. He took a picture of the symbol, which he submitted, to our attorney. He was also going through problems with the an African American female officer but he didn't report it because of her affiliation with the LGBTQ community.

Q. Did you have an opportunity to review you statement?
A. Yes.

Q. Did you have an opportunity to make any corrections/changes that you wanted to make to your statement?
A. Yes.

12

Police Officer Stacey Gonzalez   10-23-18

Q. Does this statement accurately reflect your concerns?
A. Yes.

**This is an on-going investigation being conducted by Internal Affairs; by orders of the Commanding Officer of Internal Affairs you are instructed not to disclose any information discussed here to anyone other than your attorney and FOP representative.**

**Q. Do you understand this?**
**A. Yes.**

**Please read your interview to be certain that it is accurate. If there are any errors, correct and initial them. After you reviewed your interview, please sign each page in the lower right hand corner.**

_____I would like a copy of this interview sent to me through police mail to my district/unit of assignment.

_____S.G.,_____ I would like a copy of this interview sent to my home address.

_____ I do not wish to receive a copy of this interview.

STATEMENT CONCLUDED: **6:18 PM**
I HAVE READ THE FOREGOING STATEMENT CONSISTING OF **THIRTEEN (13)** PAGES AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE: _Stacey Gonzalez_

DATE: _10/23/18_ TIME: _6:34pm_

WITNESSES: _____

_____

Police Officer Stacey Gonzalez        10-23-18

Exhibit "B"

Let me just start by saying that I will start in chronological order from a day I've entered police academy in august of 06, when I have realized that police dept. discriminates heavily against jews. Moreover, being an immigrant from Russia on a top of that created even more challenges working for city.

From firts days in academy I've been a target of numerous derogatory comments that relate to my ethnic background and religion. Several instructors ( in violation of directives ) have made comments to me like " I must break you " ( with a fake heavy russian accent ), in front of other recruits, also provoking them to continue with those type of comments and indirectly telling them that it is ok to treat someone like that.

Several recruits have made numerous comments about a fact that I'm an immigrant, always bringing up " all the benefits immigrants get, without doing any work". Any time I would get a mail in academy recruits will say that it is an immigration looking to deport me. Also, it was a common practice to say " Oh, we're just getting Jewed Out ", if something was too expansive in theirt opinion. Any time I would try to bring these conserns to instructors, I would be told that it is just a humor, and I'm just too up tight or that they 'll talk to them. But nothing would change.

Soon after graduating, within several weeks, I've been called by Sgt Ritchie, to see him in a office, where I was met by him and Sgt.Stead, who was my direct superv at a time. I was told in aggressive manner by both that several officers are complained about me, that I'm not doing things right, and asked who do you think you are by doing what you doing. They never told me who allegently had a problem with me , what was an alleged problems, and what are the ways to correct situation , assuming there was a problem with my conduct. Sgt, Ritchie that proceeded telling me that - " Look pal, there are far and few Russians in a police dept, so you watch what you do, cus you need your benefits". Then I was told to ge back to service. There was no official complaint filed against me and no paperwork ever provided with any details of alleged misconduct towards " some officers". It is unfortunately, but Sgt. Ritchie have been a source of discrimination, intimidation and hatred untill that day he got promoted in 2012, and left a district.

In those situations above, being new, I was too intimidated and scared to say something being in fear of termination, disciplinary actions and further retaliations.

Several month later, a cook out was announced for our platoon, and everyone had to bring some kind of food and drink to an event. Each person had to spend app $10. I was asked if I could bring soda worth app $40 for the whole event, and I would be given back $30. Being new and wanted to make friendly work enviroment, I went to Costco and purchased over $40 worth of high quality drinks for the event. I laso told organizers that I would not need any money back and it would be my way of thanking a district in hopes of having a good comradory with others. However as I was unloding boxes with soda ( cleary marked ) one of the officers ( P/O Mabry ) came up to me in front of numerous employees and stated in hostile nad egressive manner " - I ain't eating your nasty Russian food" and walked away. Soon after I spoke to Sgt. Stead, who appeared very reluctunt to take any action, who then replied, ' Listen , it's just cops having fun, just let it go.". I felt very discriminated and degrated. That officer also knew that I was Jewish, because I told him that in police academy, after being asked   what holidays " you Russians " celebrate.

Some time in 2010 I had to file eeo complaint ( city level ) against P/O   O'Brien because of constant harrasemet by him. Once complaint was initiated not only him, but his direct supervisor, once again Sgt. Ritchie, have became very hostile towards me, supervisor acting constantly in irritated manner any time I had to contact him for work related issues. Both of them wuould often stand and talk for some time, and if I had to politely interrupt to talk to Ritchie, he would roll his eyes up, act in irritated manner, raise his voice and use degrading vocabluraly. If I choose, under fear of such treatment, not to interrupt them, he then would once again act very irritated asking why I'm taking so long in certain tasks, placing me in a cituation where regardless of my actions he would have a " reason " to go off on me.

It was also a common practice for Sgt. Ritchie to yell out, -" I must break you, We must destroy your country" and similar in front of numerous employees as I would to enter operation room. Even Sgt. Martin noted to me at a time that his actions are not professional and could lead to eeo complaints.

It appeared that Sgt Ritchie and PO O'Brien were friends and would take each other's side when needed. It is also no secret that father of Sgt. Ritchie was an inspector in a PD, providing his son with ample connections and guarding him against actions that department might take.

There have been numerous instances where PO Muhhamad had me in discriminatory and harrassing manner. Every incident have been reported to supervision, however I was told that there is not enoght proof for anybody to take any actions. ___ papwerwork attached.____

There have been another incident where I was told to leave a post by operational room supervisor , Corpl. ___ ( 2600 N. Myrtlewood ST ). After I left there was a stabbing in an area and Capt.Lee dicided that it happened because I left a loc. SO he placed be on footbeat assignment ( foodbeat is a punishment assignmet) for 4 days at that location on following days. It was safety issue because police had a post there due to large number of homocides in an area. Moreover, disciplinary actions have been taken agaist me, even though it is common practice not to take 18s agaist you, if you've been punished by footbeat. I have never seen anyone receiving both. While working on the footbeat, a police detective been harrasing me because of my ethnicity and race. ___Paperwork included_____

There was another case, couple of years ago, where I asked Sgt Wilson to see if I can leave early using vacation time, to go to a " shomrim jewish cops " meeting which happens once a month and I was about to be late to. He said ok, and as I was walking out of districs , PO James Miller , ( now sgt) walked up to me out of blue and said - " tha's some bull shit, no need for you to go home early , what are you , special ? " It was said with alot of hatered and anger in a voice.

I also had a long conversation with my direct supervisor , SgtCione, and Lt Techner, about constant harrasement by Sgt. Bisarat who constantly harrased me, made angry comments or occused me of violations that naver taken a place. Upon talking to Lt Techner, I have express my conserns that that Sgt is constantly occusing me of misconduct and explained to him every alleged violation. He then said that I have done nothing wrong and we will talk to that sgt. However both of them did not recommend to file any official complaints, stating that it is not serious enough to " use that tool". It is also doubtful that any actions have been taken against Sgt. Bisarat for harasement. Not too long ago he got a sransfer to a special K9 unit.

Early in summer of 2014 I asked Sgt. Morris ( administrative sgt at a time ) if there are any footbeat or similar daywork positions are available at a time, due to a change in family status ( my wife being pregnant), but a fter a shrt conversation she said that nothing is available. Several months later I briefly spoke to admin Lt. _____ who said - " No we have no such openings ". And once again I asked Sgt. _____ ( admis Sgt) about such similar positions, but he said that he'll keep me in mind but nothing is available. within a few weeks of conversation , hispanic officer Carrero have got a position in a special beat assignment , even though he has less time then me. By the way his wife/girlfriend works in captains office.

Exhibit "C"
Hebrew Hammer
and Star of David





# Exhibit D

# Philadelphia PPD Locker



